COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, Radiation Control Division and Hazardous Materials and Waste Management Division, Plaintiff–Appellee,

v.

Daniel E. CAULK, Defendant–Appellant.

No. 97CA0921.

Colorado Court of Appeals, Div. II.

Nov. 13, 1998.

Field & Associates, Marci S. Gray, Denver, Colorado; Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, David Kreutzer, Assistant Attorney General, Denver, Colorado, for Plaintiffs–Appellees

Burns, Figa & Will, P.C., J. Kemper Will, David J. Richman, Englewood, Colorado, for Defendant–Appellant

Opinion by Judge VOGT.

Defendant, Daniel E. Caulk, appeals the trial court's order denying his motion to set aside the default judgment entered in favor of plaintiff, the Colorado Department of Public Health and Environment (CDPHE), Radiation Control Division and Hazardous Materials and Waste Management Division. We affirm in part, reverse in part, and remand with directions.

Defendant was the president of Ramp Industries, Inc. (Ramp), a company formerly in

the business of recycling radioactive materials and hazardous waste. In November 1993, plaintiff filed a complaint for injunctive relief and civil penalties against defendant and Ramp, alleging violations of state hazardous waste and radiation control laws. Defendant and Ramp did not file an answer, but did stipulate to the entry of preliminary injunctions which enjoined Ramp from receiving any hazardous wastes or radioactive materials until it complied with applicable laws, regulations, and orders.

Plaintiff subsequently moved for a contempt citation based on the defendants' noncompliance with the preliminary injunctions, and the court issued a show cause order in response to the motion. In August 1994, the United States Environmental Protection Agency (EPA) assumed control of the Ramp facility and began cleanup operations. After conferring with defendant, plaintiff filed and served on defendant a "Motion to Vacate Show Cause Hearing and to Set Trial," in which it withdrew its motion for a contempt citation but indicated its intention to pursue its claims for a permanent injunction and civil penalties. It then took the deposition of Ramp's former facility manager and served written discovery, to which neither Ramp nor defendant responded.

In response to court orders directing it to show cause why the case should not be dismissed for failure to prosecute, plaintiff filed numerous monthly status reports and, in May 1996, moved to amend the complaint. The motion was granted, and an amended complaint was served on defendant and Ramp in June 1996. No answer was filed.

On September 9, 1996, plaintiff filed and served on defendant a motion for entry of default judgment, accompanied by over fifty pages of supporting documentation. Three days later, the district court granted the motion and entered an order for permanent injunctive relief and for damages, including civil penalties in excess of $6 million.

On December 31, 1996, defendant filed a motion pursuant to C.R.C.P. 55(c), 60(b)(1), and 60(b)(5) to set aside the default judgment. The trial court denied the motion, finding that defendant had not established excusable neglect and that, although there might be meritorious defenses, "the balance of [the equities] does not favor litigating those defenses at this late date." The court did not address defendant's contention that, at a minimum, it should vacate the penalty assessment and permit him to present mitigating evidence on this issue.

I.

■ Defendant initially raises various challenges to the trial court's subject matter jurisdiction. We note at the outset that defendant did not assert in his motion to set aside the default judgment that the judgment was void under C.R.C.P. 60(b)(3) for lack of subject matter jurisdiction, and the trial court did not address subject matter jurisdiction in its order. Nevertheless, because challenges to subject matter jurisdiction cannot be waived and may be asserted at any time, *Dunton v. Whitewater West Recreation, Ltd.*, 942 P.2d 1348 (Colo.App.1997), we address his contentions here.

A.

Defendant contends that the trial court lacked subject matter jurisdiction to issue injunctions pertaining to violations of the Radiation Control Act, §25–11–101, et seq., C.R.S.1998, because the act does not provide for injunctive relief for licensing violations. We disagree.

■ Issues of subject matter jurisdiction generally relate to a court's authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment in that class. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo.1986); *Minto v. Lambert*, 870 P.2d 572 (Colo.App.1993); *but cf. In re Marriage of Stroud*, 631 P.2d 168, 171 (Colo.1981)("In determining whether the court has [subject matter] jurisdiction, reference must be made to the nature of the claim and the relief sought"). Thus, to the extent defendant's contention, properly characterized, is that injunctive relief was not an available remedy here, it does not raise an issue of subject matter jurisdiction. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams, supra.*

■ Moreover, even if we were to accept defendant's argument that this contention goes to subject matter jurisdiction, he would not be entitled to any relief on this basis. Under the Radiation Control Act, the CDPHE may apply to the district court for an order enjoining acts or practices which violate part 1 of the act "and all rules, regulations and orders issued under this part 1." Section 25–11–106, C.R.S.1998. Part 1 of the act includes provisions addressing violations of license conditions or of orders relating thereto. *See* §25–11–107(5), C.R.S.1998.

The trial court thus had authority to enter injunctive relief on plaintiff's claims alleging violations of license conditions. To the extent defendant claims that plaintiff did not follow the procedural requirements for obtaining injunctive relief under §25–11–107(5), such noncompliance would operate as a defense on the merits but would not affect the court's subject matter jurisdiction.

## B.

■ Defendant also contends that plaintiff lacked standing to assert a claim brought under the Rocky Mountain Low–Level Radioactive Waste Compact (Compact), §24–60–2201, et seq., C.R.S.1998, because such claims may be brought only by the Rocky Mountain Low–Level Radioactive Waste Board (Board). Again, we address this contention because it goes to the court's subject matter jurisdiction. *See Peters v. Smuggler–Durant Mining Corp.*, 910 P.2d 34 (Colo.App. 1995)(lack of standing is a jurisdictional issue and may be raised at any time), *aff'd*, 930 P.2d 575 (Colo.1997). However, we do not agree that plaintiff was without standing to bring this claim.

■ To determine whether a plaintiff has standing, a court must inquire whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977).

The Compact is a multi-state agreement which provides that each state is responsible for the management of low-level radioactive waste generated within its borders. The

CDPHE is the agency responsible for administration of the Compact on behalf of Colorado, except as otherwise provided in the Compact. Section 24–60–2205, C.R.S.1998.

Articles 6 and 7 of §24–60–2202, C.R.S. 1998, set forth the powers and duties of the Board. Such powers include enjoining violations of the Compact. *See* §24–60–2202 Article 7(5), C.R.S.1998. However, the Compact does not make the Board's enforcement power exclusive. Moreover, another section of the Compact, §24–60–2202 Article 6(O)(14), C.R.S.1998, provides for intervention by the Board in "any administrative or judicial proceeding involving low-level waste." In our view, this provision contemplates the institution, by entities other than the Board, of judicial proceedings that include allegations of activities violative of Compact provisions relating to low-level radioactive waste.

■ Plaintiff's fourth claim for relief, brought under the Compact, asserted that Ramp had violated the Compact by failing to obtain written approval from either the Board or the CDPHE prior to receiving two containers of a low-level radioactive waste at its Denver facility. We conclude that, as part of its responsibility to administer the Compact, the CDPHE had standing to assert this claim, and the trial court thus had jurisdiction to enter the relief requested for the violation.

## C.

■ Defendant's other substantive objections to the default judgment do not go to the court's jurisdiction, but instead raise, at most, potential defenses to plaintiff's claims. For example, defendant argues that applicable statutes of limitations deprived the trial court of jurisdiction over certain claims. However, a statute of limitations limits the time in which an action may be brought, but does not deprive a court of jurisdiction. *In re Estate of Kubby*, 929 P.2d 55 (Colo.App. 1996).

In addition, defendant initially argues that the court "lacked personal jurisdiction" over him. He then acknowledges in his reply brief that "the trial court had personal jurisdiction of Mr. Caulk," but contends that

there was no basis for the imposition of personal liability on him. However, defenses to personal liability go to the merits of the action. They do not deprive the court of jurisdiction.

Defendant also challenges the default judgment on the bases that it conflicts with federal law, that it includes an improper interest component, and that, as to one claim, plaintiff should have been represented by a county or district· attorney rather than the attorney general. As before, however, these contentions, even if correct, do not relate to the court's subject matter jurisdiction.

In sum, defendant has not established that the trial court lacked subject matter jurisdiction. We do not further address his substantive challenges to plaintiff's right of recovery because, as discussed below, we conclude that the trial court acted within its discretion in denying relief under C.R.C.P. 60(b) and thus did not need to consider defendant's defenses on the merits.

## II.

Defendant next argues that the trial court abused its discretion in refusing to set aside the default judgment pursuant to C.R.C.P. 60(b)(1), based on excusable neglect, or pursuant to C.R.C.P. 60(b)(5). We are not persuaded.

C.R.C.P. 55(c) states that, for good cause shown, the court may set aside an entry of a default judgment in accordance with C.R.C.P. 60(b). C.R.C.P. 60(b)(1) provides that the court may relieve a party from a final judgment by reason of mistake, inadvertence, surprise, or excusable neglect.

■ A party moving to set aside a default judgment bears the burden of establishing ·the grounds for relief by clear, strong, and satisfactory proof. *Sumler v. District Court*, 889 P.2d 50 (Colo.1995).

■ Where a motion for relief is predicated on a claim of excusable neglect, the trial court should base its decision on the following criteria: (1) whether the neglect that resulted in entry of the default judgment was excusable; (2) whether the moving party has alleged a meritorious claim or de-

fense; and (3) whether relief from the challenged order would be consistent with considerations of equity. The court may deny the motion if the movant fails to satisfy any of these three criteria. *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112 (Colo.1986).

■ In general, excusable neglect involves unforeseen circumstances which would cause a reasonably prudent person to overlook a required act in the performance of some responsibility. Failure to act because of carelessness and negligence is not excusable neglect. *Messler v. Phillips*, 867 P.2d 128 (Colo.App.1993).

In addition, C.R.C.P. 60(b)(5) allows a party to obtain relief from a final judgment "for any other reason justifying relief from the operation of the judgment." However, this residual provision has been construed to allow relief only in "extraordinary circumstances" or "extreme situations." *Dunton v. Whitewater West Recreation, Ltd., supra*, 942 P.2d at 1352.

■ It is within the trial court's discretion to determine whether a party's conduct justifies relief from a judgment, and such determination will be upheld unless the court abused its discretion. *Messler v. Phillips, supra*.

Here, the trial court set forth the *Buckmiller* 'criteria governing its consideration of defendant's motion, and then stated:

This action was nearly three years old when the Court entered default judgment against the Defendants. During that time, Defendants received copies of various filings from Plaintiffs and copies of this Court's orders. Plaintiffs also served Defendants with a copy of the Court's order granting an amendment to the complaint on July 8, 1996 pursuant to C.R.C.P. 5. Defendants admit that they knew about the proceedings. However, Defendants argue that because they were without counsel, they misunderstood the gravity of their actions until a postjudgment con-.tempt citation was issued.

It is obvious that Defendants neglected this matter. This was a complex action that involved substantial penalties. Defendants failed to file an answer, enter an

appearance, or even write a letter to the Court in the nearly three years that this action had been on the Court's docket. Defendant Caulk entered his first appearance before the Court after being served with a postjudgment contempt citation. The Court notes that Defendant Caulk was found in contempt on November 8, 1996.

Defendants argue that they were overwhelmed by the EPA action and thought that their negotiations with Plaintiffs excused their appearance in this action. Defendants also argue that they mistakenly believed that they could not be held liable both to the EPA under federal law and to the Plaintiffs under state law. There is no doubt that Defendants knew that this action existed and that it involved complex matters. Perhaps Defendants should have hired counsel or conducted independent research. In any event, the Court finds that Defendants' actions constitute neglect, but not excusable neglect. Further, although Defendants may have meritorious defenses, the Court finds that the balance of [the equities] does not favor litigating those defenses at this late date.

As a threshold matter, we reject defendant's argument that the trial court's order does not reasonably explain the basis for its decision. The order sets forth the applicable legal standard for ruling on the motion, and adequately permits us to ascertain the basis for the court's determination that defendant's neglect was not excusable. *See Norton v. Raymond,* 30 Colo.App. 338, 491 P.2d 1403 (1971).

■ Further, we cannot say that the trial court's determination was an abuse of discretion. Defendant did not establish that there were unforeseen circumstances that would cause a reasonably prudent person to fail for almost three years to respond to the serious allegations made by plaintiff. *See Messler v. Phillips, supra.* Also, defendant's asserted belief that the EPA involvement, or the negotiations with plaintiff, somehow obviated his obligation to respond to plaintiff's complaint does not require a finding of excusable neglect. *See Blazer Electric Supply Co. v. Bertrand,* 952 P.2d 857 (Colo.App.1998) (defendant's failure to appear for trial based on

his alleged belief that removal proceedings were still pending in federal court did not constitute excusable neglect).

Because defendant failed to establish excusable neglect, the trial court was not required to address the other *Buckmiller* criteria; and the fact that the court nevertheless noted that defendant might have meritorious defenses does not render the denial of the motion an abuse of discretion. *See Dunton v. Whitewater West Recreation, Ltd., supra.*

■ Defendant's motion to set aside the default judgment was also predicated on C.R.C.P. 60(b)(5), which he argued provided a basis for relief based on "considerations of equity." We conclude that the equitable considerations cited by defendant to the trial court namely, the impossibility of compliance with the injunctive provisions given the EPA's control of the Ramp facility, the size and discretionary nature of the damages award, and the entry of judgment without a hearing do not present the sort of "extraordinary circumstances" or "extreme situations" that would require relief under C.R.C.P. 60(b)(5). *See Dunton v. Whitewater West Recreation, supra;* *Blazer Electric Supply Co. v. Bertrand, supra.* Accordingly, it was likewise no abuse of discretion to deny the motion to the extent it was premised on C.R.C.P. 60(b)(5).

### III.

Defendant also asserts that the default judgment should have been set aside or, at a minimum, the penalty assessment reconsidered, because the judgment was entered without a hearing and without giving him an opportunity to respond. Specifically, he contends that a hearing was required so he could present evidence of his inability to pay and evidence regarding the other statutory mitigating factors which the court was required to consider in assessing penalties under the Hazardous Waste Act, §25–15–301, et seq., C.R.S.1998. We agree in part.

Plaintiff's amended complaint sought injunctive relief, damages, and civil penalties of not more than $25,000 per day, the amount set forth in §25–15–309, C.R.S.1998, for various violations of the Hazardous Waste Act.

In its default judgment motion, plaintiff sought a total penalty of $6,196,659, plus $23,654.65 in damages representing unpaid inspection and license renewal fees. Among the materials submitted in support of the motion was an affidavit from plaintiff's compliance coordinator, who oversees enforcement actions for violations of state hazardous waste laws and is responsible for calculating penalties for violations of those laws. The affidavit was accompanied by a detailed penalty computation summary and worksheets which showed, as to each claim for relief, not only the mathematical calculations but also the analysis and penalty adjustments made in consideration of the statutory factors set forth in §25–15–309 and in plaintiff's penalty policy. The worksheets addressed the seriousness of each violation, and made adjustments based on criteria such as good faith, degree of willfulness or negligence, history of noncompliance, and number of days the violation continued. According to the worksheets, no adjustment was made based on ability to pay, because neither Ramp nor defendant had responded to plaintiff's request for financial information that would have shown whether they were able to pay.

In addition to these materials, plaintiff submitted affidavits from an accountant and an administrative program specialist detailing the unpaid fees for which defendants were liable and attaching copies of the unpaid invoices.

Plaintiff did not request a hearing on its default judgment motion, but did indicate in the motion that defendant had appeared and thus was entitled to at least three days notice if the court determined that a hearing was necessary. Plaintiff also stated that defendant had been served with a copy of the motion and proposed order.

Three days after the motion was filed, the court entered judgment for the amount requested. No hearing was held.

■ As an initial matter, we reject defendant's contention that the default judgment should have been set aside because it was entered before he had been given adequate time to respond.

Defendant does not deny that he had notice of the motion for default judgment, but argues that he should have been given the fifteen days provided under C.R.C.P. 121 Section 1–15(1), plus three additional days for service by mail, to respond to the motion. However, the record is devoid of any indication that he attempted to respond within the period which he now claims should have been allowed for a response. Instead, even after being served with a motion seeking over $6 million in penalties, defendant took no steps to seek a hearing, retain counsel, or otherwise respond to plaintiff's claims until almost two months later, when he appeared in court after having been personally served by the sheriff with a contempt citation. Thus, even if the court had waited eighteen days, it would still not have had a response from defendant. In these circumstances, defendant's argument that insufficient time was given is unavailing.

We likewise do not agree that the trial court was required to set aside the default judgment in its entirety because no hearing was held.

C.R.C.P. 55(b) provides in relevant part:

If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

■ A trial court generally has broad discretion in deciding whether to conduct a hearing before entry of a default judgment. *Orebaugh v. Doskocil,* 145 Colo. 484, 359 P.2d 671 (1961); *Crow–Watson No. 8 v. Miranda,* 736 P.2d 1260 (Colo.App.1986).

■ No hearing is required on damages if the damages claimed are liquidated or in an amount calculable by mathematical pro-

cesses alone. *Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672 (Colo.1987).

 Here, a portion of the amount awarded represented damages for fees whose amount was definite and ascertainable from the invoices provided with the default judgment motion. As to these damages, as well as to the non-monetary relief awarded, defendant was not entitled to a hearing as a matter of right, even if we assume that he had previously appeared in the action. *See Crow–Watson # 8 v. Miranda,* 736 P.2d 1260 (Colo.App.1986) (defendant who had appeared but did not answer or initially respond to default judgment motion seeking liquidated damages was not entitled to have default judgment vacated on basis that she was not given a hearing and three days notice thereof).

 However, the major portion of the monetary judgment entered here consisted of civil penalties assessed under §25–15–309(3), C.R.S.1998. As noted, that statute requires that a court consider specific enumerated factors, including mitigating factors, in determining the amount of civil penalties.

Civil penalties awarded pursuant to such a statute are not liquidated damages or damages in an amount calculable by mathematical processes alone. *See United Artists Corp. v. Freeman,* 605 F.2d 854 (5th Cir. 1979) (damages awarded in default judgment for copyright infringement under statute that gave range of damages for each violation were not liquidated or capable of mathematical calculation).

Thus, notwithstanding the documentation provided by plaintiff in support of its penalty calculation, we conclude that defendant should have been given an opportunity to present countervailing evidence regarding the §25–15–309(3) factors, even though he did not request an opportunity to do so when he first received notice of the default judgment motion. *See Kwik Way Stores, Inc. v. Caldwell, supra* (trial court was required to allow defaulting defendants opportunity to participate fully in damages hearing); *Johnston v. S.W. Devanney & Co.,* 719 P.2d 734 (Colo. App.1986) (although the court properly declined to set aside default judgment in its

entirety, it was an abuse of discretion to refuse to set aside the damages portion of the judgment where unliquidated compensatory and punitive damages had been awarded without an evidentiary hearing, and where defendant had sought a hearing on damages within a few weeks after he learned of the default judgment).

The trial court's order is affirmed to the extent it declined to set aside the default judgment as to liability, non-monetary relief, and damages awarded for unpaid fees. The order is reversed insofar as it declined to vacate the portion of the damages award representing civil penalties. The cause is remanded for a hearing for the limited purpose of taking evidence from both parties regarding the amount of civil penalties to be assessed.

CRISWELL and CASEBOLT, JJ., concur.