Deborah J. BORER and Ted Borer, Petitioners

v.

Chris LEWIS and Carolyn Lewis, Respondents.

No. 02SC808.

Supreme Court of Colorado, En Banc.

May 24, 2004.

Rehearing Denied June 21, 2004.*

* Justice MARTINEZ would grant the petition.

The Law Firm of Stephen H. Cook, P.C., Stephen H. Cook, Derek Regensburger, Boulder, Colorado, Walter H. Sargent, Colorado Springs, Colorado, Attorneys for Petitioners.

John R. Rodman & Associates, John R. Rodman, Denver, Colorado, Attorney for Respondents.

Justice RICE delivered the Opinion of the Court.

The plaintiffs, Deborah and Ted Borer (hereinafter the "Plaintiffs"), appeal from a court of appeals decision affirming a trial court order setting aside a default judgment against the defendant, Carolyn Lewis (hereinafter the "Defendant"). The trial court found that the Defendant proved by a pre-

ponderance of the evidence that process had never been served to her, and the court of appeals affirmed. The Plaintiffs argue that the lower courts erred in requiring the Defendant to prove that the default judgment should be set aside only by a preponderance of the evidence. Instead, the Plaintiffs claim that the Defendant was required to present "clear, strong and satisfactory proof" that the judgment should be set aside. We agree with the Plaintiffs that the lower courts erred in applying the preponderance of the evidence standard. However, because we find that, viewing the record as a whole, the Defendant did present "clear, strong and satisfactory proof" that she was never served, we uphold the order setting aside the default judgment.

## I. Facts and Proceedings Below

This case stems from an automobile accident which took place on September 21, 1984, wherein a car driven by Otway Shans crashed into a vehicle in which Deborah Borer was a passenger. At the time of the accident, Shans, who had not yet received his driver's license, was driving a car owned by his friend, Chris Lewis, and insured by Chris' mother, Carolyn Lewis. Mrs. Borer and her husband initially filed suit only against Shans but, in June 1986, filed an amended complaint adding Chris and Carolyn Lewis as defendants and asserting claims of negligent entrustment against both Chris and Carolyn Lewis as well as civil conspiracy and outrageous conduct against Chris Lewis.

The Plaintiffs claim that they achieved service of process against the Defendant on October 3, 1986, relying on a Return of Service signed by Denver Deputy Sheriff Sherri Chase which stated that a summons and a copy of the First Amended Complaint were served on the Defendant on that date. Based on the Defendant's failure to file a timely response to that complaint, the trial judge, upon the Plaintiffs' motion, entered a default judgment against the Defendant on March 11, 1987. The Defendant and her son then filed their answer to the First Amended Complaint on March 16, 1987.

Subsequently, the Defendant discovered the default judgment which had been entered against her, and, on July 21, 1987, filed a Motion to Set Aside Default Judgment Against Carolyn Lewis and to Permit Filing of Answer and Supporting Memorandum pursuant to C.R.C.P. 55(c). In support of her motion, the Defendant provided an affidavit stating that she had never been served with a summons and complaint; that she was insured at the time of the accident and was aware of the need to give prompt notice of service to her insurer; that she did not own the car driven by Shans and did not entrust the car to Shans on the night of the accident; and that she believed she had a meritorious defense.[1] The trial judge, after considering the Defendant's affidavit as well as the Return of Service signed by Deputy Chase, ruled that the Defendant was properly served on October 3, 1986, that the Defendant had failed to establish the existence of a meritorious defense, and that the balance of equities weighed in the Plaintiffs' favor. The trial judge therefore denied the Defendant's motion to set aside the default judgment.

After a jury trial wherein damages were assessed against the Defendant and liability and damages were determined as against both Chris Lewis and Otway Shans, the Defendant again moved to set aside the judgment, this time citing evidence that she had been heavily sedated in October 1986 and therefore would have been unable to recognize the summons and complaint if they were in fact served upon her. The trial court denied that motion and the Defendant ap-

---

1. The Defendant essentially raised two distinct arguments in her motion. First, if the Defendant were to prove that she was never actually served, the Defendant could have the default judgment set aside as void. See Weber v. Williams, 137 Colo. 269, 277, 324 P.2d 365, 369 (1958) (stating that "a judgment rendered without service is ... void") (quoting Great West Min. Co. v. Woodmas of Alston Min. Co., 12 Colo. 46, 53, 20 P. 771, 775 (1888)). Alternatively, the Defendant could have the judgment set aside on grounds of "excusable neglect" pursuant to C.R.C.P. 60(b). In order to prove excusable neglect, the Defendant would have to establish that the neglect leading to the default judgment was excusable, that she has alleged a meritorious defense, and that relief from the default judgment would be consistent with equitable considerations including the prevention of prejudice to the non-moving party. See Craig v. Rider, 651 P.2d 397, 402 (Colo.1982).

pealed. In April 1990, the court of appeals reversed the trial court's orders denying the Defendant's motions to set aside the default judgment. The court of appeals ruled that the trial court erred in failing to conduct an evidentiary hearing prior to ruling on the matter. Thus, the court of appeals remanded the matter to the trial court with directions to conduct an evidentiary hearing both as to whether the Defendant was actually served and, if so, whether the default judgment might nevertheless be set aside based on grounds of excusable neglect.

At the hearing on remand, the Defendant testified that she had never been served and also testified regarding the nature of various medical problems she had been experiencing during October 1986 which required her to take medications that interfered with her memory as well as her ability to appreciate the full implication of legal documents. Additionally, the Defendant presented the testimony of her insurance representative, who stated that he was in contact with the Defendant during the relevant time period and that she had consistently stated to him that she was not served with any summons in October 1986.

The Plaintiffs offered the testimony of Deputy Chase, who could not specifically remember serving papers to the Defendant but instead described her habit and routine practice regarding service of process generally. Deputy Chase testified that she was serving approximately fifty to eighty people per day during October 1986 and would routinely note on each service envelope whether service was successful. In addition to Deputy Chase's testimony, the Plaintiffs relied on the service envelope and Return of Service documentation created by the Deputy in October 1986, as well as earlier affidavits in which Deputy Chase described her service of process to the Defendant, as evidence that the Defendant was in fact served.

At the close of the hearings, the trial court ruled in favor of the Defendant because it found that she had established by a preponderance of the evidence that she had not been served. The trial court's ruling was based on a determination that Deputy Chase's testimony regarding the amount of summonses served daily was "not plausible" and that inconsistencies in her testimony regarding the security details of the Defendant's building "detract[ed] from her believability." The court further noted that while the Defendant was not "particularly credible," her "active participation in other court proceedings [made] it unlikely that she would attempt to evade the instant case by claiming non-service of process." Finally, the trial court observed that because the Defendant was represented by counsel and her legal expenses were covered by insurance, she had little incentive to falsely deny process. Thus, finding that process had not been served, the trial court never ruled on the Defendant's arguments regarding excusable neglect.

After several years of proceedings regarding the outstanding claims, the trial court granted summary judgment in favor of the Defendant and Chris Lewis on all claims against them. The Plaintiffs appealed both the entry of summary judgment and the order setting aside the default judgment against the Defendant based on the preponderance of the evidence standard. The court of appeals reversed the trial court's entry of summary judgment. However, the court of appeals upheld the trial court's order setting aside the default judgment against the Defendant, ruling that the trial court properly applied the preponderance of the evidence standard to the issue before it. This appeal followed.

## II. Applicable Law

At issue before us today is what burden should be applied to a party seeking to overturn a default judgment entered against them. In particular, we are called upon to address whether section 13–25–127, 5 C.R.S. (2003), which sets forth the burden of proof for civil actions, has effectively overridden the standard previously established through our common law. In order to answer these questions, we look first to our common law establishing the burden of proof in setting aside default judgments, and then to section 13–25–127 to determine what impact, if any, that statutory enactment has had on the common law rule.

## A. *Common Law*

■ The process by which a default judgment may be set aside under C.R.C.P. 55(c) or C.R.C.P. 60(b) [2] has been well-established through our case law. "The underlying goal in ruling on motions to set aside default judgments is to promote substantial justice." *Craig*, 651 P.2d at 401. The determination of whether a default judgment should be set aside in order to promote substantial justice is generally left to the sound discretion of the trial court. *Id.* at 402; *see also, e.g., Browning v. Potter*, 129 Colo. 448, 457, 271 P.2d 418, 423 (1954) (stating that "the granting or denial of an application to vacate a default judgment, based on excusable neglect rests in the sound judicial discretion of the trial court"); *Gumaer v. Bell*, 51 Colo. 473, 482, 119 P. 681, 684 (1911) (observing that applications for relief against default judgments "are addressed to the discretion—the legal discretion—of the court in which the default has occurred, and should be disposed of by it as substantial justice may so require"). However, such discretion is not without bounds:

> When there does exist a controlling legal standard, however, a court may not disregard that standard in favor of some other legal rule. The fact that the legal standard requires the consideration and application of several elements to the facts of a case does not alter in the least the court's obligation to decide the controversy in accordance with that standard. Thus, while a court may retain discretion in determining the weight to be given certain evidence relevant to the controlling legal criteria or in assessing the relative significance to be accorded various factors encompassed within those criteria, it must exercise that discretion within the framework of, rather than in disregard of, the controlling legal norms.

*Buckmiller*, 727 P.2d at 1115–16 (reversing a trial court's denial of a motion to set aside default judgment on grounds of excusable neglect where the trial court failed to consider all the legal criteria necessary to the resolution of the motion).

■ When ruling on a motion to set aside a default judgment, a trial court's discretion is bound by the applicable burden of proof on the moving party. We have long held that a party seeking relief from a default judgment "has the burden of establishing the grounds 'by clear, strong and satisfactory proof.'" *Craig*, 651 P.2d at 402 (quoting *Riss v. Air Rental, Inc.*, 136 Colo. 216, 218, 315 P.2d 820, 821 (1957)); *see also, e.g., Browning*, 129 Colo. at 457, 271 P.2d at 423. Additionally, we have equated the "clear, strong and satisfactory proof" standard with the "clear and convincing" burden of proof. *See Craig*, 651 P.2d at 402 (noting that the "alternate formulation [of clear and convincing] describes no different test than the 'clear, strong and satisfactory proof' test"); *Burr v. Allard*, 133 Colo. 270, 275, 293 P.2d 969, 972 (1956) (stating the standard as "clear and convincing proof"). Thus, whether seeking to overturn a default judgment under C.R.C.P. 55(c) for "good cause," or under C.R.C.P. 60(b) for "excusable neglect," a party has been required to establish his or her right to the relief sought by clear and convincing proof. We turn now to the issue of whether passage of section 13–25–127 altered this well-established burden of proof.

## B. *The Statute*

■ Section 13–25–127(1) provides that "the burden of proof in any civil action shall be by a preponderance of the evidence." Both the trial court and the court of appeals below found that this section applies to a motion to set aside a default judgment, and therefore replaces our common law burden of "clear and convincing proof" with the re-

---

**2.** C.R.C.P. 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." C.R.C.P. 60(b) further provides, as relevant here, that "the court may relieve a party or his legal representative from a final judgment, order, or proceeding for ... (1) ... excusable neglect." We have previously noted that "a mo-

tion to set aside a default under C.R.C.P. 55(c) and a motion to vacate a judgment under C.R.C.P. 60(b) on the basis of excusable neglect are sufficiently analogous to justify the application of the same standards to either motion." *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1116 (Colo.1986); *see also Craig v. Rider*, 651 P.2d 397, 401 (Colo.1982). Thus, our discussion today governs motions under both rules.

duced "preponderance of the evidence" standard. We disagree.

At the outset, we note that the section establishes a burden of proof which applies only to "civil actions." § 13–25–127(1). For the reasons discussed below, we construe the term "civil action" as being limited to the substantive action or claim itself, rather than all procedural motions which might arise throughout the course of that civil action. We further find that a motion for the setting aside of a default judgment is not a "civil action," but instead is a simple procedural motion taking place within the context of a substantive "civil action." Thus, we hold that section 13–25–127, which governs the burden of proof for "civil actions," is inapplicable to a motion to set aside a default judgment.

■ We have previously distinguished between rules governing procedural issues and rules governing substantive issues, noting that "rules adopted to permit the courts to function and function efficiently are procedural whereas matters of public policy are substantive and are therefore appropriate subjects for legislation." *People v. Wiedemer*, 852 P.2d 424, 436 (Colo.1993); *see also People v. Bobian*, 626 P.2d 1132, 1134–35 (Colo.1981); *People v. McKenna*, 196 Colo. 367, 370, 585 P.2d 275, 276–77 (1978). Under the state constitution, we possess plenary authority to create procedural rules in both civil and criminal cases. Colo. Const. art. VI, sec. 21 ("The supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases. . . ."). On the other hand, the legislature may enact statutes governing substantive issues, including rules which are designed to further matters of public policy. *See, e.g., Wiedemer*, 852 P.2d at 436 ("The legislature, however, has the authority to enact statutes directed to substantive matters as distinguished from procedural matters."); *Bobian*, 626 P.2d at 1135 (recognizing that "the General Assembly has the power to promulgate substantive rules of evidence"); *McKenna*, 196 Colo. at 373, 585 P.2d at 279 (upholding the General Assembly's enactment of Colorado's rape-shield statute).

■ The distinction between a procedural and a substantive rule is not always clear, but "legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule." *McKenna*, 196 Colo. at 373, 585 P.2d at 279. To the extent such distinctions must be drawn, however, we strive to avoid any unnecessary "[c]onfrontation[s] of constitutional authority," and instead seek to reconcile the language and intent of the legislative enactment with our own well-established rules of procedure. *Id.*

■ With these principles in mind, we turn to section 13–25–127. We recognize that section 13–25–127 is a proper legislative enactment insofar as it applies to the burden of proof in substantive civil actions because the overall burden necessary to prove a civil claim is a matter of public policy. *See, e.g., Vikman v. Int'l Broth. of Elec. Workers, Local Union No. 1269*, 889 P.2d 646, 661 (Colo.1995) (concluding that "the public policy established by the General Assembly precludes judicial imposition of a heightened burden of proof on a person seeking remedies against a labor union for allegedly tortious conduct" rather than the "preponderance of the evidence" burden set forth by state statute).

On the other hand, we find that section 13–25–127 cannot be read as applying to motions to set aside default judgments. A motion to set aside a default judgment is a simple procedural matter; rules governing such motions do not implicate any of the larger considerations of public policy, but instead are designed to "permit the courts to function and function efficiently." *Wiedemer*, 852 P.2d at 436. Moreover, under the power reserved expressly to the judiciary for the promulgation of rules governing procedural matters, we have clearly established the burden of proof necessary to win a motion to set aside a default judgment. Thus, in order to avoid a "confrontation of constitutional authority," we hold that in enacting section 13–25–127, the General Assembly did not legislatively override the "clear and convincing" burden of proof which has always been applied to proceedings to set aside default judg-

ments. Were we to conclude otherwise, we would be required to find the statute unconstitutional as an impermissible infringement on the judiciary's authority to promulgate procedural rules.

Our holding today is consistent with our cases addressing default judgments since enactment of the section. In every case which has arisen regarding motions to set aside default judgments, we have applied our traditional "clear, strong and satisfactory proof" standard. *See In re Weisbard,* 25 P.3d 24, 26 (Colo.2001) (applying the "clear, strong and satisfactory proof" default judgment standard to a motion to vacate a default judgment in an attorney regulation case); *Sumler v. Dist. Court,* 889 P.2d 50, 55–56 (Colo.1995) (applying the "clear, strong and satisfactory proof" standard to a motion to set aside a default judgment in a wrongful termination case); *Buckmiller,* 727 P.2d at 1116 (applying the "clear, strong and satisfactory proof" standard to a motion to set aside a default judgment in a slip and fall case); *Craig,* 651 P.2d at 402 (applying the "clear, strong and satisfactory proof" default judgment standard to a motion to vacate a formal testacy order); *see also Colo. Dep't of Pub. Health and Env't v. Caulk,* 969 P.2d 804, 809 (Colo. App.1998) (applying the "clear, strong and satisfactory proof" standard to a motion to set aside a default judgment in a hazardous waste suit). Thus, while we did not explicitly address section 13–25–127 in any of these cases, we have continued to apply the higher, common law burden of proof to motions to set aside default judgments for over three decades following the enactment of the section.

On the other hand, we have applied the statutory "preponderance of the evidence" standard to substantive civil claims in cases following enactment of section 13–25–127. For example, in *Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989), we found that the statutory burden of proof was applicable in an adverse possession case, rather than the clear and convincing standard previously established throughout our case law. *See also Water*

*Rights of Masters Inv. Co. v. Irrigationists Ass'n,* 702 P.2d 268 (Colo.1985) (applying the statutory standard to the intent to abandon water rights). In reaching our holding, we stated that the burden of proof set forth in section 13–25–127 applied in civil cases except where a "constitutional concern" dictates otherwise. *Gerner,* 768 P.2d at 704; *see also Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1108 (Colo.1982) (holding that the common law "clear and convincing" standard superseded the statutory "preponderance of the evidence" standard where the constitutional issue of freedom of speech was implicated in a defamation action). In each of the above cases applying the preponderance of the evidence standard, our discussion of section 13–25–127 addressed the burden of proof applicable to a substantive civil claim, and was unrelated to any procedural motion.

Thus, we have implicitly distinguished between the applicability of section 13–25–127 to substantive civil claims as opposed to procedural motions. *See Salle v. Howe,* 757 P.2d 154, 155 (Colo.App.1988) ("We presume that ... our supreme court was cognizant of [section 13–25–127], but specifically chose to maintain as a matter of procedure, the higher quantum of proof, developed at common law, in proceedings to set aside default judgments."). In issuing our holding today, we make that distinction explicit.

In sum, we find that the common law "clear, strong and satisfactory" burden of proof remains applicable in the context of motions to set aside default judgments. The General Assembly's enactment of section 13–25–127, while properly establishing the burden of proof applicable to substantive "civil actions," did not override the procedural rule which we had already established. We therefore disapprove the decisions of the lower courts insofar as they improperly applied the lower "preponderance of the evidence" standard to the Defendant's motion to set aside the default judgment against her.[3]

---

3. In issuing today's opinion, we overrule the court of appeals' decision in *White Front Auto Sales, Inc. v. Mygatt,* which held that the defendant was required to prove lack of service of process only by a preponderance of the evidence. 810 P.2d 234 (Colo.App.1990).

### III. Application

Despite the lower courts' application of the improper standard to the Defendant's motion, we nevertheless uphold the order setting aside the default judgment against the Defendant. Viewing the record as a whole, we find that the Defendant did establish, by clear and convincing evidence, that she was not served with a summons and complaint in October 1986.[4] The only significant evidence suggesting that the Defendant was served was the Return of Service signed by Deputy Chase. However, as the trial court noted, Deputy Chase's testimony regarding serving the Defendant was inconsistent at best. In fact, the trial court found Deputy Chase's testimony regarding service of process in general to be implausible. Conversely, the trial court found no reason to doubt the Defendant's claim that she was not served. The Defendant was aware of the litigation, had spoken with her insurance representative regarding the litigation during the relevant time period, and had acknowledged service of process to her son regarding the claims against him. Additionally, the Defendant had no incentive to deny service of process, given that her insurance company was providing her with counsel and covering the expenses of litigation. Finally, the Defendant presented the corroborative testimony of her insurance representative, who confirmed that in his several conversations with the Defendant, she had repeatedly denied being served in October 1986. Thus, considering the evidence as a whole, we find that the Defendant established by "clear, strong and satisfactory proof" that she was never served with process.

### IV. Conclusion

We find that the trial court and the court of appeals erred in applying the statutory preponderance of the evidence standard to the Defendant's motion to set aside the default judgment against her. Instead, we hold that the burden of proof set forth in section 13–25–127 is applicable only to substantive civil actions, while our common law procedural rule requiring "clear, strong and satisfactory proof" remains applicable to proceedings to set aside default judgments. We further hold that the Defendant presented sufficient testimony that she was not served so as to satisfy the "clear, strong and satisfactory proof" standard. Thus, we affirm the lower courts' rulings setting aside the default judgment against the Defendant.

Justice MARTINEZ concurs in part and dissents in part.

Justice MARTINEZ concurring in part and dissenting in part:

Although I agree with the majority's analysis of the proper standard, I write in this case because I do not agree that we should usurp the authority of the trial court and ourselves apply that standard to the disputed facts of this case. In particular, I do not agree that we should be deciding issues of credibility based solely on a dry record, which itself highlights credibility issues in this case, and without the benefit of live testimony. Therefore, I respectfully dissent as to part III of the majority opinion.

As the majority points out, the trial court did not find the testimony of Deputy Chase particularly credible. However, the trial court also seriously questioned the Defendant's credibility. The trial court specifically stated in its ruling that it did "not find [the Defendant] particularly credible. She was manipulative, evasive, and at times, untruthful on the stand." Additionally, the record reveals that the Defendant had been convicted of felonies including fraud and deceit, criminal impersonation, and false statements. The Defendant's own psychiatrist testified that at times the Defendant manipulated events and that she was not an honest person. Furthermore, despite the alleged failure of service of process, the Defendant filed an untimely answer brief, but did not bring up the lack of service. The Defendant did not address lack of service until two years later.

---

4. Ordinarily, the determination of whether the Defendant had satisfied the burden of proof necessary to set aside the default judgment would be a matter for the trial court. *Craig*, 651 P.2d at

402. However, as a matter of judicial economy, we will address the issue based on the trial court's factual findings as set forth in the record below.

Although the trial court ultimately found in favor of the Defendant, it prefaced its discussion by stating that the Defendant had established "by a preponderance of the evidence that she had not been served." When analyzing the credibility of the witnesses, the court noted only that due to other pending legal matters, it was "unlikely" that the Defendant would falsely claim non-service of process. I find it particularly troublesome that the trial court used the word, "unlikely," which is more suggestive of the preponderance standard than of the greater "clear and convincing" standard. For all of these reasons, review of the trial court's decision does not provide assurance that the decision would have come out the same way had the court used the proper standard of clear and convincing evidence.

We have held innumerable times before that issues of credibility should be decided by the trial court. "It is the function of the trial court, and not the reviewing court, to weigh evidence and determine the credibility of the witnesses." *People v. Pitts,* 13 P.3d 1218, 1221 (Colo.2000). "The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, the inferences and conclusions to be drawn therefrom, of necessity, are all within the province of the trial court...." *Broncucia v. McGee,* 173 Colo. 22, 25, 475 P.2d 336, 337 (1970); see also *People v. Mendoza–Balderama,* 981 P.2d 150, 157 (Colo.1999) ("When confronted with a choice of competing facts upon which the trial court has not passed, we are hesitant, as an appellate court, to weigh the evidence and determine credibility."); *People v. Jordan,* 891 P.2d 1010, 1019 (Colo.1995) ("this court may not speculate on witness credibility"); *Wilson v. Bd. of County Commrs.,* 703 P.2d 1257, 1259 (Colo.1985) ("it is not the province of this court to judge the weight of the evidence or the credibility of the witnesses").

Therefore, consistent with our previous case law, I would remand this case to the trial court to reexamine the credibility of the witnesses given the higher standard for motions to set aside default judgment that we reiterate today.