Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 31**

**No. 16S970, People in Interest of R.S.—Children's Code—Dependency or Neglect
Proceedings—Appeals.**

In this dependency or neglect case, the trial court held a single adjudicatory trial
to determine the dependent or neglected status of the child, with the judge serving as
fact-finder with respect to allegations against the child's mother, and a jury sitting as
fact-finder with respect to the allegations against the child's father. The judge
ultimately concluded that the child was dependent or neglected "in regard to" the
mother. In contrast, the jury concluded there was insufficient factual basis to support a
finding that the child was dependent or neglected. In light of these divergent findings,
the trial court adjudicated the child dependent or neglected and continued to exercise
jurisdiction over the child and the mother, but entered an order dismissing the father
from the petition. The People appealed the jury's verdict regarding the father.

The court of appeals dismissed the People's appeal for lack of jurisdiction,
reasoning that the dismissal of a single parent from a petition in dependency or neglect
based on a jury verdict is not a final appealable order because neither the appellate rule

nor the statutory provision governing appeals from proceedings in dependency or neglect expressly permits an appeal from a "'no adjudication' finding."

The supreme court concludes that, with limited exceptions not relevant here, section 19-1-109(1) of the Colorado Children's Code authorizes appeals in dependency or neglect proceedings from "any order" that qualifies as a "final judgment" for purposes of section 13-4-102(1), C.R.S. (2017). Because the trial court's order in this case dismissing the father from the petition was not a "final judgment," the supreme court concludes that the court of appeals lacked jurisdiction and properly dismissed the Department's appeal.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

## 2018 CO 31

---

**Supreme Court Case No. 16SC970**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA685

---

**Petitioner:**

The People of the State of Colorado,

**In the Interest of Minor Child:**

R.S.

v.

**Respondents:**

G.S. and D.S.

---

**Dismissal Affirmed**
*en banc*
April 30, 2018

---

**Attorneys for Petitioner:**
Ron Carl, County Attorney, Arapahoe County
Michael Valentine
Marilee McWilliams
  *Aurora, Colorado*

**Guardian ad Litem for the Minor Child:**
Bettenberg, Sharshel & Maguire, LLC
Alison A. Bettenberg
Ranee Sharshel
  *Centennial, Colorado*

**Attorneys for Amicus Curiae Office of the Child's Representative:**
Cara L. Nord
  *Denver, Colorado*

**Attorneys for Amicus Curiae Office of Respondent Parents' Counsel:**
Ruchi Kapoor
  *Denver, Colorado*

No appearance on behalf of Respondents.

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE COATS** concurs in the judgment.

¶1 In this case, the Arapahoe County Department of Human Services filed a petition in dependency or neglect concerning minor child R.S., and naming both parents as respondents. The mother requested a bench trial to adjudicate the dependent or neglected status of the child; the father requested a jury trial for the same purpose. The court held a single adjudicatory trial, with the judge serving as fact-finder with respect to the Department's allegations against the mother, and a jury sitting as fact-finder with respect to the allegations against the father. The judge ultimately concluded that the child was dependent or neglected "in regard to" the mother. In contrast, the jury, as the father's fact-finder, concluded there was insufficient factual basis to support a finding that the child was dependent or neglected. In light of these divergent findings, the trial court adjudicated the child dependent or neglected and continued to exercise jurisdiction over the child and the mother, but entered an order dismissing the father from the petition. The mother appealed the trial court's adjudication of the child as dependent or neglected; the Department appealed the jury's verdict regarding the father, as well as the trial court's denial of the Department's motion for adjudication notwithstanding the verdict.

¶2 In a unanimous, published opinion, the court of appeals dismissed the Department's appeal for lack of jurisdiction, reasoning that the dismissal of a single parent from a petition in dependency or neglect based on a jury verdict is not a final appealable order because neither the appellate rule nor the statutory provision governing appeals from proceedings in dependency or neglect expressly permits an

3

appeal from a "'no adjudication' finding." See People In Interest of S.M-L., 2016 COA 173, ¶¶ 15–23, ___ P.3d ___. We granted the Department and the guardian ad litem's petition for certiorari review.[1]

¶3     We conclude that, with limited exceptions not relevant here, section 19-1-109(1) of the Colorado Children's Code authorizes appeals in dependency or neglect proceedings from "any order" that qualifies as a "final judgment" for purposes of section 13-4-102(1), C.R.S. (2017). Because the trial court's order in this case dismissing the father from the petition was not a "final judgment," we conclude that the court of appeals lacked jurisdiction and properly dismissed the Department's appeal. We therefore affirm the court of appeals' dismissal of the Department's appeal, albeit under different reasoning.

## I. Facts and Procedural History

¶4     In January 2016, the Arapahoe County Department of Human Services filed a petition in dependency or neglect before the Arapahoe County District Court concerning minor child R.S. and two other minor children,[2] naming R.S.'s biological mother ("Mother") and biological father ("Father") as respondents. The petition alleged

---

[1] We granted certiorari to review the following issue: "Whether a denial of adjudication in a dependency and neglect action is a final order for purposes of appeal."

[2] The Department's petition also involves two other children, S.M-L. (Mother's biological daughter and Father's stepdaughter) and B.M-M. (Mother's biological son and Father's stepson), and names O.M-M. (the biological father of S.M-L. and B.M-M.) as an additional respondent. The appeal before this court concerns only the legal status of R.S. with respect to Mother and Father.

4

that R.S. was dependent or neglected under section 19-3-102(1)(a)–(d), C.R.S. (2017), on the grounds that her parents had "abandoned" her, "subjected [her] to mistreatment or abuse," or "suffered or allowed another to mistreat or abuse [her] without taking lawful means to stop such mistreatment or abuse"; she "lack[ed] proper parental care"; her "environment [was] injurious to [her] welfare"; and her parents failed or refused to provide proper or necessary care for her well-being. As factual support for these claims, the petition alleged that Father had sexually abused his stepdaughter (R.S.'s half-sister) S.M-L., who lived with R.S. and Mother. The petition further alleged that Mother did not believe S.M-L.'s outcry and that Mother stated that S.M-L. had lied about the abuse. The petition did not allege that Father had sexually abused R.S. or that R.S. made an outcry.

¶5 Father and Mother denied the allegations and each requested a trial to adjudicate the dependent or neglected status of R.S. Mother requested a bench trial, and Father requested a jury trial.

¶6 A single trial was held on April 19–21, 2016, with the trial court sitting as Mother's fact-finder and a jury sitting as Father's fact-finder.[3] The Department

---

[3] Because Mother's case required certain additional testimony, the adjudicatory trial proceeded in two phases. In the first phase, spanning April 19–20, the parties presented evidence pertaining to both Mother's and Father's cases. At the end of the second day of trial, the parties presented closing arguments to the jury, and the jury retired to deliberate as to Father. On April 21 (the third day of trial), the parties presented additional evidence regarding Mother's case and gave closing arguments to the trial

5

presented expert testimony from the Arapahoe County investigator who investigated the allegations that Father had sexually assaulted S.M-L., the caseworker assigned to the family, a forensic interviewer who interviewed S.M-L. regarding the sexual-assault allegations against Father, and a licensed clinical social worker with expertise in sexual abuse. The Department also presented lay testimony from S.M-L. and Mother. The Department contended that R.S. faced "prospective harm" as a result of Father's conduct toward S.M-L., stating in closing argument that, "If the evidence shows that [Father] was inappropriate with his stepdaughter [S.M-L.], then we know that [R.S.] is at risk." R.S.'s guardian ad litem (the "GAL") agreed with the Department, adding that R.S. should be adjudicated as dependent or neglected because Mother "is blatantly unwilling to even look at the idea that this may have happened to [S.M-L.]."

¶7 The trial court, as Mother's fact-finder, determined that R.S. was dependent or neglected, finding that Mother's response to S.M-L.'s outcry was insufficient to protect her children, even if the allegations were ultimately untrue. The trial court observed, "[Mother] does not believe that the information provided by [S.M-L.] is true. Nonetheless, [Mother] has not developed a way to protect [R.S.] should the allegations

---

court. The court then made its ruling (as to Mother) and read the jury verdict (as to Father).

be true," nor has she "determined how she would shelter [R.S.] from [Father] during times that [R.S.] might be vulnerable."

¶8 In contrast, the jury, as Father's fact-finder, found insufficient factual basis to support a finding that R.S. was dependent or neglected. The Department moved for an adjudication notwithstanding the jury's verdict, arguing that the verdict was not supported by the evidence. The trial court denied the motion and entered an order dismissing Father from the petition. The court then entered an order adjudicating R.S. as dependent or neglected "in regard to" Mother and adopted a treatment plan for her. The case continued with Mother maintaining custody of R.S. under the Department's supervision.

¶9 Father later pled guilty in a separate criminal case to a charge of unlawful sexual contact—no consent, in violation of section 18-3-404(1)(a), C.R.S. (2017). On October 24, 2016, Father was sentenced to four years of Sex Offender Intensive Supervision Probation and was barred from contact with children under the age of 18.

¶10 Mother appealed the trial court's adjudication of R.S. as dependent or neglected with regard to her. The Department appealed the jury's nonadjudication verdict regarding Father and the trial court's denial of its motion for adjudication notwithstanding the verdict.[4]

---

[4] The GAL did not file a notice of appeal with respect to the trial court's orders, but did file briefing urging the court of appeals to affirm the adjudication of R.S. as dependent or neglected and to reverse the trial court's orders dismissing Father from the petition

¶11    The court of appeals issued an order to show cause why the Department's appeal should not be dismissed for lack of a final appealable order, questioning whether the dismissal of a single parent from a dependency or neglect petition based on a jury verdict was a final appealable order. See People In Interest of S.M-L., 2016 COA 173, ¶ 15, ___ P.3d ___. In response to the show-cause order, the Department cited People in Interest of M.A.L., 592 P.2d 415 (Colo. App. 1976), in which the court of appeals entertained an appeal of a jury verdict finding that minor children were not dependent or neglected. See S.M-L., ¶ 15. A motions division of the court allowed the appeal to proceed and for the issue of finality to be considered on the merits. See id.

¶12    In a unanimous, published opinion, the court of appeals dismissed the Department's appeal, concluding that "the [trial] court's dismissal of a party from a dependency or neglect petition based on a jury's verdict is not a final appealable order under [the Colorado Appellate Rules] or the [Colorado] Children's Code." S.M-L., ¶ 15. The court examined C.A.R. 3.4(a) and section 19-1-109, C.R.S. (2017) — the appellate rule and statutory provision governing appeals from proceedings in dependency or neglect — and concluded that neither contains language expressly permitting an appeal

_____

based on the jury verdict. After the court of appeals dismissed the Department's appeal, the GAL joined in the Department's petition for writ of certiorari and in the Department's merits briefing before this court.

from a "'no adjudication' finding." Id. at ¶¶ 19–20. Thus, the court reasoned, the General Assembly did not intend for such findings to be appealable orders. Id.

¶13 We granted the Department and the GAL's joint petition for certiorari review of the court of appeals' dismissal of the Department's appeal.[5]

## II. Analysis

¶14 As the court of appeals observed both in its show-cause order and its opinion, the question here is whether the dismissal of one parent from a petition based on a jury's "no adjudication" verdict constitutes a final appealable order. See S.M-L., ¶ 15. Accordingly, we analyze whether the statutory provisions and court rule governing appeals in dependency or neglect proceedings authorized the Department's appeal of the trial court's order dismissing Father from the petition based on the jury's "no adjudication" verdict. We conclude that section 19-1-109(1) of the Colorado Children's Code authorizes appeals from "any order, decree, or judgment" in dependency or neglect proceedings, but only to the extent that such appeals are permitted by section 13-4-102(1), C.R.S. (2017). As pertinent here, section 13-4-102(1) authorizes the appeal of any order that constitutes a final judgment. Here, the order dismissing Father from the petition was not a final judgment because it did not end the dependency or neglect proceeding or provide a final determination of the rights of all the parties to the

---

[5] Neither Mother nor Father entered appearances or filed briefing before this court. The Office of Respondent Parents' Counsel filed an amicus brief in support of Mother and Father. The Office of the Child's Representative filed an amicus brief in support of the Department and the GAL.

proceeding.  Therefore, the court of appeals lacked jurisdiction and properly dismissed the Department's appeal.

## A.  Statutory Authorization for Appeals from Proceedings in Dependency or Neglect

¶15     We begin by examining the statutory provisions governing appeals from proceedings in dependency or neglect.  We review questions of statutory construction de novo.  Trujillo v. Colo. Div. of Ins., 2014 CO 17, ¶ 12, 320 P.3d 1208, 1212.  In interpreting these provisions, "[o]ur objective is to effectuate the intent and purpose of the General Assembly."  Id. at ¶ 12, 320 P.3d at 1212–13.  To determine the legislature's intent, we look first to the plain language of a statutory provision.  Bostelman v. People, 162 P.3d 686, 690 (Colo. 2007).  Where the statutory language is clear, we apply the plain and ordinary meaning of the provision.  Trujillo, ¶ 12, 320 P.3d at 1213.  Additionally, a statute must be read "as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible."  Whitaker v. People, 48 P.3d 555, 558 (Colo. 2002).

¶16     Section 19-1-109 of the Colorado Children's Code governs appeals from proceedings in juvenile court, including dependency or neglect proceedings.  Subsection (1) states that an appeal may be taken from "any order, decree, or judgment," "as provided in the introductory portion to section 13-4-102(1), C.R.S." § 19-1-109(1).  In turn, section 13-4-102(1) provides that the court of appeals shall have

initial jurisdiction over appeals from "final judgments"[6] of district courts, including

juvenile courts that preside over dependency or neglect proceedings.[7]

¶17    Section 19-1-109(1)'s reference to appeals "as provided in" section 13-4-102(1)

means that an appeal from juvenile court proceedings must be brought in the court of

appeals and must fall within the scope of appealable orders authorized by section

13-4-102(1).  Because section 13-4-102(1), as pertinent here,[8] authorizes the court of

appeals to review "final judgments," we conclude that section 19-1-109(1) authorizes

appeals in dependency or neglect proceedings from any order that qualifies as "final"

for purposes of section 13-4-102(1).

¶18    In considering whether section 19-1-109 authorized the appeal of the trial court's

order dismissing Father from the petition, the court of appeals focused its analysis on

subsection (2)(b) and (2)(c) of the statute, which designate certain types of orders in

dependency or neglect proceedings as final appealable orders, including "an order

terminating or refusing to terminate" a parent-child relationship and "an order

---

[6] Consistent with C.R.C.P. 54(a), we understand the term "judgment" to include orders and decrees.

[7] The Colorado Children's Code defines "juvenile court" as "the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver."  § 19-1-103(70), C.R.S. (2017).

[8] Section 13-4-102(1) also provides that the court of appeals shall have initial jurisdiction over interlocutory appeals of certified questions of law in civil cases from the district courts, the probate court of the City and County of Denver, and the juvenile court of the City and County of Denver, with certain exceptions.  Such appeals are not at issue in this case.

decreeing a child to be neglected or dependent" following entry of the disposition. See § 19-1-109(2)(b)–(c); S.M-L., ¶¶ 19–20. The court of appeals reasoned that the omission of "no adjudication" findings from the list of appealable orders identified in subsection (2)(b) and (2)(c) reflects the legislature's intent not to permit such appeals. See S.M-L., ¶¶ 18–20.

¶19 We disagree with the court of appeals' construction of subsection (2)(b) and (2)(c) because it conflicts with the plain meaning of subsection (1). Subsection (2) must be read in conjunction with subsection (1), with the goal of giving harmonious and sensible effect to each subsection. See People v. Kennaugh, 80 P.3d 315, 317 (Colo. 2003). As discussed above, subsection (1) authorizes the appeal of "any order" from a dependency or neglect proceeding that is "final." Rather than treat subsection (2)(b) and (2)(c) as limiting the types of orders in dependency or neglect proceedings that may be appealed, we construe subsection (2)(b) and (2)(c) to authorize appeals from certain additional orders beyond those authorized by subsection (1).

¶20 Put differently, subsection (1) codifies a general rule of finality, and subsection (2)(b) and (2)(c) provide certain exceptions to that general rule by authorizing the appeal of certain orders from dependency or neglect proceedings that would not otherwise be considered "final." For example, subsection (2)(c) provides that an order of adjudication becomes a final appealable order after the entry of the disposition. Such an order, however, does not "end[] the particular action in which it is entered." People v. Guatney, 214 P.3d 1049, 1051 (Colo. 2009). Rather, an adjudication order authorizes

12

the juvenile court to make further orders affecting the child and the rights of the parents. See § 19-3-508, C.R.S. (2017); A.M. v. A.C., 2013 CO 16, ¶ 12, 296 P.3d 1026, 1031 ("The adjudication represents the court's determination that state intervention is necessary to protect the child and that the family requires rehabilitative services in order to safely parent the child"). In other words, but for section 19-1-109(2)(c), an adjudication order ordinarily would not be an appealable order because it would not be considered "final."

¶21 The statutory history of section 19-1-109 further supports our reading of subsections (1) and (2). Since its enactment, the statute has permitted the appeal of any "final" order in a dependency or neglect proceeding, and nothing in the subsequent amendments to section 19-1-109 (or its predecessor provisions) evinces a clear legislative intent to limit the right to appeal in dependency or neglect cases.

¶22 In 1967, the General Assembly enacted the Colorado Children's Code, which was then codified under Title 22 of the Revised Statutes. See Ch. 443, sec. 1, §§ 22-1-1 to 22-10-7, 1967 Colo. Sess. Laws 993, 993–1039. Section 22-1-12 of the 1967 Children's Code, a predecessor to section 19-1-109, allowed appeals from orders in juvenile proceedings to be taken to the supreme court.[9] That provision stated, in relevant part: "An appeal from any order, decree, or judgment may be taken to the supreme court by writ of error as provided by the Colorado rules of civil procedure . . . ." § 22-1-12, C.R.S.

---

[9] At the time of the enactment of the 1967 Children's Code, the Colorado Court of Appeals did not exist.

13

(1963 & Supp. 1967). At the time, Rule 111 of the Colorado Rules of Civil Procedure provided that a writ of error shall lie from the supreme court to, among other things, "a final judgment of any district, county, or juvenile court in all actions or special proceedings whether governed by [the Colorado Rules of Civil Procedure] or by the [Colorado Revised Statutes]." C.R.C.P. 111(a)(1), (1963). Thus, in 1967, the legislature allowed "any order, decree, or judgment" in a dependency or neglect proceeding that was "final" to be appealed to the supreme court by writ of error.

¶23    The General Assembly reestablished the Colorado Court of Appeals in 1969, adding Article 21 ("Court of Appeals") to Title 37 ("Courts of Record") of the Revised Statutes. See ch. 106, sec. 1, 1969, §§ 37-21-1 to 37-21-14, Colo. Sess. Laws 265, 265–68. In so doing, the legislature provided that the court of appeals "shall have initial jurisdiction over appeals from final judgments of the district courts." § 37-21-2(1)(a), C.R.S. (1963 & Supp. 1969); see also § 13-4-102(1), C.R.S. (2017) (current codification). Two years later, in 1971, the legislature amended section 22-1-12 (the Children's Code provision governing appeals), to provide that an appeal may be taken from any order, decree or judgment "as provided in section 37-21-2(1)(a)." Ch. 87, sec. 5, § 22-1-12, 1971 Colo. Sess. Laws 286, 287.

¶24    The 1971 amendment to section 22-1-12 had the effect of redirecting appeals from juvenile proceedings to the court of appeals, thus replacing the prior method of appeal to the supreme court by writ of error. Significantly, the cross-reference to section 37-21-2 demonstrates the legislature's continued intent to allow appeals from any

14

"final" order in a juvenile proceeding.  In other words, nothing in the 1971 amendment altered the <u>scope</u> of appealable orders in juvenile proceedings, which under the original version of section 22-1-12 likewise included all orders that were "final."

¶25 In 1973, the legislature amended section 22-1-12 by adding the following as subsection (2): "The People of the State of Colorado shall have the same right to appeal questions of law in delinquency cases under section 22-1-4(1)(b) as exists in criminal cases."  Ch. 110, sec. 10, § 22-1-12, 1973 Colo. Sess. Laws 384, 388.  The addition of subsection (2) appears to have altered, for the first time, the scope of appealable orders in juvenile proceedings.  However, under its plain terms, the 1973 alteration affected only delinquency cases and did not suggest the legislature intended to alter or limit any party's right to appeal in other juvenile proceedings, such as dependency or neglect cases.

¶26 Following various recodification projects affecting the ordering of the Revised Statutes, <u>see, e.g.</u>, ch. 138, sec. 1, §§ 19-1-101 to 19-6-105, 1987 Colo. Sess. Laws 695, 812 (recodifying the entire Children's Code), section 22-1-12 and section 37-21-2 were relocated to section 19-1-109 and section 13-4-102, respectively, and the cross-reference was correspondingly updated.

¶27 Finally, in 1997, the General Assembly amended section 19-1-109(2) by designating the provision governing the People's right to appeal in delinquency cases as paragraph (a), and adding new paragraphs (b) and (c) identifying certain types of orders in dependency or neglect proceedings as final and appealable:

15

(b) An order terminating or refusing to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, shall be a final and appealable order.

(c) An order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19-3-508. Any appeal shall not affect the jurisdiction of the trial court to enter such further dispositional orders as the court believes to be in the best interests of the child.

Ch. 254, sec. 7, § 19-1-109(2)(b)–(c), 1997 Colo. Sess. Laws 1426, 1433. The legislature has not further amended subsections (1) or (2).

¶28 Nothing in the 1997 amendment to subsection (2) evinces legislative intent to restrict appealable orders in dependency or neglect proceedings to those orders described in paragraphs (b) and (c). Certainly, nothing in the language of the amendment altered subsection (1) or expressly limited the scope of appealable orders in such proceedings generally. Moreover, to construe paragraphs (b) and (c) as limitations on the right to appeal ignores that the statute historically has authorized the appeal of any final order in dependency or neglect proceedings, and that none of the previous amendments to section 19-1-109 (or its predecessors) ever sought to limit the scope of appealable orders in such proceedings.[10] If anything, the 1997 addition of paragraphs (b) and (c) in subsection (2) introduced examples of exceptions to the general finality

---

[10] Even if section 19-1-109(2)(a) could be construed to limit the orders that are appealable in delinquency cases, we see no reason to construe subsection (2)(b) and (2)(c) to circumscribe the right to appeal in dependency or neglect cases.

16

requirement embodied in section 109(1)—thus expanding the types of orders that may be appealed in dependency or neglect cases.

¶29 In sum, we hold that section 19-1-109(1) authorizes the appeal of any order from a dependency or neglect proceeding that is "final" and that section 19-1-109(2) authorizes the appeal of certain orders in addition to those orders whose appeal is authorized by section 19-1-109(1).

## B. Whether Section 19-1-109 Conflicts with C.A.R. 3.4(a)

¶30 Having determined that section 19-1-109(1) authorizes the appeal of any final order and that subsection (2) of that statute does not limit the scope of appealable orders under subsection (1), we next examine whether this statutory provision conflicts with C.A.R. 3.4, the appellate rule governing appeals from proceedings in dependency or neglect. See § 19-1-109(1) ("Appellate procedure shall be as provided by the Colorado appellate rules.").

¶31 Because the Department filed its appeal on April 25, 2016, its appeal was governed by a prior version of C.A.R. 3.4(a), which stated: "How Taken. Appeals from orders in dependency or neglect proceedings, as permitted by section 19-1-109(2)(b) and (c), C.R.S., and including final orders of permanent legal custody entered pursuant to

17

section 19-3-702, C.R.S, shall be in the manner and within the time prescribed by this rule." (Second emphasis added.)[11]

¶32 We apply "[t]he standard principles of statutory construction . . . to our interpretation of court rules." In re Marriage of Wiggins, 2012 CO 44, ¶ 24, 279 P.3d 1, 7. Where a rule promulgated by this court and a statute conflict, the question becomes whether the affected matter is "procedural" or "substantive." See Borer v. Lewis, 91 P.3d 375, 380–81 (Colo. 2004); People v. Wiedemer, 852 P.2d 424, 436 (Colo. 1993); People v. McKenna, 585 P.2d 275, 276–79 (Colo. 1978). The state constitution vests this court with plenary authority to create procedural rules in civil and criminal cases, but the legislature has authority to enact statutes governing substantive matters as distinguished from procedural matters. Borer, 91 P.3d at 380; Wiedemer, 852 P.2d at 436. Thus, if the affected matter is "procedural," then the court rule controls; if the affected matter is "substantive," then the statute controls. See Borer, 91 P.3d at 380;

---

[11] The current version of C.A.R. 3.4(a) was adopted by this court on May 23, 2016, and became effective for all cases filed on or after July 1, 2016. In its current form, C.A.R. 3.4(a) reads:

> How Taken. Appeals from judgments, decrees, or orders in dependency or neglect proceedings, as permitted by section 19-1-109(2)(b) and (c), C.R.S., including an order allocating parental responsibilities pursuant to section 19-1-104(6), C.R.S., final orders entered pursuant to section 19-3-612, C.R.S., and final orders of permanent legal custody entered pursuant to section 19-3-702 and 19-3-605, C.R.S., must be in the manner and within the time prescribed by this rule.

Because the Department filed its appeal on April 25, 2016, its appeal was subject to the pre–July 2016 version of C.A.R. 3.4(a), which, as quoted above in the text, referred only to appeals from orders, but not from judgments or decrees.

18

<u>Wiedemer</u>, 852 P.2d at 436. Although the distinction between "procedural" and "substantive" matters is sometimes difficult to discern, we have held that, generally, "rules adopted to permit the courts to function and function efficiently are procedural whereas matters of public policy are substantive and are therefore appropriate subjects for legislation." <u>Wiedemer</u>, 852 P.2d at 436. We have further explained that when distinguishing between legislative policy and judicial rulemaking, "we strive to avoid any unnecessary '[c]onfrontation[s] of constitutional authority,' and instead seek to reconcile the language and intent of the legislative enactment with our own well-established rules of procedure." <u>Borer</u>, 91 P.3d at 380 (alterations in original) (quoting <u>McKenna</u>, 585 P.2d at 279). Finally, we have recognized that "legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule." <u>McKenna</u>, 585 P.2d at 279.

¶33 The applicable version of C.A.R. 3.4(a) generally establishes the manner and time for appeals in dependency or neglect proceedings. But by referring to "[a]ppeals from orders in dependency or neglect proceedings, <u>as permitted by section 19-1-109(2)(b) and (c)</u>," the rule also implies that <u>only</u> those orders specifically identified in subsection (2)(b) and (2)(c) may be appealed. Thus, the rule appears to conflict with section 19-1-109(1), which we have determined authorizes the appeal of any final order in dependency or neglect proceedings.

¶34 We conclude that the matter at issue here—the scope of appealable orders from dependency or neglect proceedings—is "substantive" and that the statute therefore

must prevail over the court rule. Even before we expressly adopted the distinction between "substantive" and "procedural" matters as a formal analytical framework for resolving conflicts between statutes and court rules, we held that "[s]tatutes pertaining to the creation of appellate remedies take precedence over judicial rules of procedure." Bill Dreiling Motor Co. v. Court of Appeals, 468 P.2d 37, 41 (Colo. 1970). Implicit in the notion that appellate remedies created by statute cannot be limited by court rules is our understanding that the state constitution confers to the legislature the right to define the subject matter jurisdiction of the appellate courts and, by extension, the kinds of orders that may be appealed. See id. at 40; People ex rel. City of Aurora v. Smith, 424 P.2d 772, 774 (Colo. 1967). We have thus long recognized that the question of what orders may be appealed is a "matter[] of public policy" that is an "appropriate subject[] for legislation," see Wiedemer, 852 P.2d at 436, even if we have not always expressly labeled it as a "substantive" matter. We conclude that the scope of appealable orders in dependency or neglect proceedings is a "substantive" matter, as it pertains to a party's right to appeal from such proceedings and to the subject matter jurisdiction of the court of appeals.

¶35 Accordingly, we hold that, to the extent that the prior version of C.A.R. 3.4(a) conflicts with section 19-1-109(1), the statute prevails and the rule cannot limit the types of orders from dependency or neglect proceedings that may be appealed under the statute.

20

## C. Whether the Order Dismissing Father was "Final"

¶36    Having concluded that section 19-1-109(1) authorizes the appeal from any "final" order in a dependency or neglect proceeding, and that the applicable version of C.A.R. 3.4(a) does not limit the types of orders that may be appealed under the statute, we next consider whether the trial court's order dismissing Father from the petition was "final."

¶37    The general requirement that an order must be final to be appealable stems from the well-established principle "that an entire case must be decided before any ruling in that case can be appealed." Cyr v. Dist. Court, 685 P.2d 769, 770 (Colo. 1984).  We have consistently characterized a final order as "one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." Guatney, 214 P.3d at 1051 (citing People v. Jefferson, 748 P.2d 1223, 1224 (Colo. 1988); Stillings v. Davis, 406 P.2d 337, 338 (Colo. 1965)).  Thus, in determining whether an order is final for purposes of appeal, we generally ask "whether the action of the court constitutes a final determination of the rights of the parties in the action." Cyr, 685 P.2d at 770.

¶38    We conclude that the order dismissing Father was not "a final determination of the rights" of all of the parties to the action, nor did it "end[] the particular action in which it [was] entered." See id. at 770 & n.2.  Indeed, after entering the order dismissing Father, the trial court adjudicated R.S. as dependent or neglected ("in regard to" Mother).  The court thus continued to exercise jurisdiction over the child and

21

Mother, adopted a treatment plan for Mother, and ordered the case to proceed with Mother maintaining custody of R.S. under the Department's supervision.

¶39    We do not address whether C.R.C.P. 54(b), which "creates an exception to the general requirement that an entire case be resolved by a final judgment before an appeal is brought," Lytle v. Kite, 728 P.2d 305, 308 (Colo. 1986), applies to the trial court's order dismissing Father. Rule 54(b) permits a trial court "to direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," but "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Here, the trial court did not certify the order dismissing Father as final under Rule 54(b) or make any determinations relating to Rule 54(b), and no party sought Rule 54(b) certification. Under these circumstances, we will not, sua sponte, inject into this case the issue of whether the order dismissing Father from the petition could have been certified as a final judgment pursuant to C.R.C.P. 54(b).

¶40    Because the order dismissing Father from the petition was not "final" for purposes of section 13-4-102, we conclude that the court of appeals lacked jurisdiction and properly dismissed the Department's appeal.

## III. Conclusion

¶41    We conclude that, with limited exceptions not relevant here, section 19-1-109(1) of the Colorado Children's Code authorizes appeals of all orders in dependency or neglect proceedings that are "final judgments." Because the order dismissing Father

22

from the petition was not a "final judgment," the court of appeals lacked jurisdiction to hear the Department's appeal of that order.  Accordingly, we affirm the court of appeals' dismissal of the Department's appeal.

**JUSTICE COATS** concurs in the judgment.

JUSTICE COATS, concurring in the judgment.

¶42    Because I agree that the People were not authorized to appeal either the jury verdict finding the child not dependent or neglected or the denial of their motion for an adjudication notwithstanding the jury's verdict, I concur in the majority's judgment affirming dismissal by the court of appeals.  It is not the majority's finding that the People's appeal was unauthorized with which I disagree, but rather its determination, which I consider both unnecessary to the resolution of this case and mistaken, that but for the court's continued exercise of jurisdiction over the child as the result of its adjudication of dependency or neglect in regard to the mother, the People's appeal would be so authorized.  Because I also understand the majority to concede, however, that it is the prerogative of the legislature to preclude an appeal by the People at this stage of the proceedings if, as a matter of policy, it chooses to do so, and that it has simply failed to do so thus far, I do not consider the error, as it concerns dependency or neglect orders, to be of substantial moment.  Rather, I write to briefly explain why I do not consider the majority rationale the better construction of the applicable statutes and why I believe its premises should not be extended beyond the dependency or neglect context to which they are applied in this case.

¶43    The majority's construction rests entirely on the weight it attributes to the word "any" in the sentence appearing in section 19-1-109(1) of the revised statutes, "An appeal as provided in the introductory portion to section 13-4-102(1), C.R.S., may be taken from any order, decree, or judgment," and the fact that section 13-4-102(1), C.R.S.

1

(2017), describes, among other things, the court of appeals' "initial jurisdiction over appeals from <u>final</u> judgments," <u>id.</u> (emphasis added), of the district courts. The majority reasons that this subsection therefore authorizes an appeal to the court of appeals from any "final" order, decree, or judgment, by any party, notwithstanding the immediately following subsection of the statute, expressly authorizing certain, and limiting other, appeals by the "people of the state of Colorado." § 19-1-109(2), C.R.S. (2017). Unlike the majority, I believe that when read in conjunction with subsection (1) of section 19-1-109, subsection (2) can only be understood to specify when, and with regard to what questions, judgments in both delinquency and dependency or neglect proceedings will be subject to appeal by the People.

¶44    Whether or not the term "final" as used in section 13-4-102 could have the meaning ascribed to it, the word "any" simply cannot shoulder the burden levied upon it by the majority. Subsection (2) of section 19-1-109 contains three paragraphs distinguishing the right of the People to appeal from that of the juvenile or parents, with regard to three different classes of judgments. The majority asserts that rather than clarifying or limiting the appellate rights of the People with regard to the judgments referred to in subsection (1), these provisions permit appeals in addition to the already authorized appeal of "any" final judgment. This proposition is, however, difficult to square with the statutory scheme as a whole. Paragraph (2)(a) of section 19-1-109 permits appeals of questions of law by the People in delinquency cases to the same extent as permitted in criminal cases, but because such appeals are limited to final

2

judgments even in criminal cases, see § 16-12-102(1), C.R.S. (2017); People v. Gabriesheski, 262 P.3d 653, 656 (Colo. 2011), paragraph (2)(a) would be completely superfluous if the legislature had already authorized appeals by the People of all final judgments concerning juveniles in subsection (1). Similarly, paragraph (2)(b) expressly permits appeals both from orders terminating and orders refusing to terminate parental rights, but if appeals by the People of all final orders were already authorized, paragraph (2)(b) would add nothing by authorizing appeals of orders refusing to terminate parental rights. Rather, the only reasonable conclusion to be drawn from the legislature's choice, in back-to-back paragraphs, to specify with regard to termination of parental rights that both orders terminating and orders refusing to terminate would be appealable but, concerning dependency or neglect, to designate as appealable only orders actually decreeing a child to be dependent or neglected, must surely be that the legislature did not intend for orders declining to adjudicate a child dependent or neglected to be appealable by the People at all.

¶45    This, of course, is precisely the understanding of these statutory provisions incorporated by this court in C.A.R. 3.4. At all times pertinent to this case, that rule expressly permitted, and still does permit, appeals in dependency or neglect proceedings only as described in paragraphs (2)(b) and (c) of section 19-1-109, without reference to subsection (1). Despite our clear intent to conform the rule to the statute, and our long-expressed reluctance to enter the separation-of-powers fray by construing our own rules to be in conflict with the legislative statutes, see, e.g., People v. Owens,

3

228 P.3d 969, 971–72 (Colo. 2010), the majority is forced to overcome this hurdle to its current statutory interpretation by construing the rule and statute to be in irreconcilable conflict, and resolving that conflict by finding the matter to be "substantive," giving precedence to the statute, according to the majority's current interpretation. In addition to finding this maneuver wholly unconvincing, I am concerned by the majority's unnecessarily positing a conflict between statute and rule and gratuitously taking another stab at the delicate distinction between "procedural" and "substantive" matters.

¶46    Quite apart from its effect on dependency or neglect law, I am also concerned about the implications of the majority's construction for the reviewability of matters by the appellate courts in general, and the initial jurisdiction of the court of appeals in particular. Unlike the majority, I do not believe section 13-4-102 is concerned with the appellate reviewability of judgments at all, a matter as to which it defers to the appellate rules, but rather with the initial jurisdiction of this state's statutory, as distinguished from its constitutional, appellate court. Cf. Bill Dreiling Motor Co. v. Court of Appeals, 468 P.2d 37, 40–41 (Colo. 1970). As one clear indication that section 13-4-102 has not been understood to be exclusive, or at least that its use of the term "final" was intended broadly in the sense of "reviewable," within the contemplation of C.A.R. 1, the initial jurisdiction of the court of appeals over orders granting or denying temporary injunctions (made immediately reviewable by C.A.R. 1(a)(3)) has regularly been exercised without question, despite those orders not being "final" either according

to the categorization of Rule 1 or the majority's test.  See, e.g., Gergel v. High View Homes, L.L.C., 58 P.3d 1132, 1135 (Colo. App. 2002).  More importantly, however, neither section 13-4-102 nor section 19-1-109 remotely suggests that finality is the sole criterion determining the appealability of any particular judgment, by any particular party, at any particular point in time.

¶47    Appeals by the People in criminal and delinquency cases are among the clearest examples of review being barred as moot, notwithstanding the finality of the judgment with regard to which review is sought, in the absence of express statutory authorization to the contrary.  See People v. Guatney, 214 P.3d 1049, 1050–51 (Colo. 2009); In re People in Interest of P.L.V., 490 P.2d 685, 687 (Colo. 1971).  In providing such express statutory authorization in this jurisdiction, see § 16-12-102(1), the legislature has nevertheless subjected appeals by the People to the procedures dictated by the rules of this court, much as it has done in section 13-4-102, which we have construed to include a limitation to finality as required by C.A.R. 1.  Notwithstanding this general limitation concerning finality, however, we have regularly acceded to specific legislative direction with regard to the finality of certain classes of orders, based on policy judgments within the purview of the legislature, even where we have previously found precisely the contrary according to our own jurisprudence concerning finality.  See, e.g., § 16-12-102(1) (amendments permitting immediate review of orders dismissing some but not all counts prior to trial, orders granting new trials, orders judging legislative acts to be inoperative or unconstitutional).  In this regard, our case law is replete with examples of

5

our deferring to the legislature, regardless of any general requirement of finality, concerning the immediate appealability of any particular order or judgment.

¶48    Finally, I note that the immediate reviewability of particular court orders, by particular parties, depends largely on how the legislature conceives of the entire process of which the order in question is a part.  With regard to the denial of motions by the People to revoke probation, for example, we have concluded that despite clearly finalizing the question whether the defendant's probation is to be revoked on the basis of the current motion, such an order is not a final, appealable order as contemplated by section 16-12-102.  See Guatney, 214 P.3d at 1051.  In the probation revocation context, we relied primarily on two considerations:  first, the fact that the review of an order revoking probation was expressly contemplated by both statute and rule, while no similar provision existed for orders declining to revoke; and second, the fact that, in light of such things as the defendant's unchanged status as a probationer and the continued ability of the People to file for revocation whenever warranted, orders denying revocation, in contrast to orders granting revocation, did not exhibit typical indicia of finality.  Id.  I believe both considerations apply with equal force to the no adjudication orders at issue here.  Rather than the product of some ill-defined interplay among various canons of statutory construction, I believe the language with which the legislature has expressed itself in section 19-1-109 demonstrates, on its face, a legislative conception of the adjudication of dependency or neglect as merely one step in a process of identification, treatment, and if necessary termination, final only in the sense that an

6

adjudication adversely affects the parent's right to maintain custody, while an order of no adjudication merely maintains the status quo, without limiting the People's right, and obligation, to refile when warranted by additional circumstances.

¶49 I therefore believe the majority fails to grasp the true legislative intent reflected in these statutory provisions. Whether or not mine is the better view, however, I consider it unfortunate that the majority chooses to resolve this question in a case in which even it holds that the department's appeal on behalf of the People was premature and could not be sustained. Under these circumstances, I would simply disapprove the court of appeals' construction as unnecessary; affirm its ultimate judgment on the more narrow grounds upon which the majority relies in any event; and wait for a case in which our resolution of the broader question whether the People are statutorily authorized to appeal from no adjudication orders would be of consequence for the outcome.